Farron Curry, WSBA #40559
Email: fcurry@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHAWNNA MONTES, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPARC GROUP LLC,<br><br>Defendant. | Case No. 2:22-cv-00201<br><br>DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>**6/15/23**<br>**With Oral Argument: 11:00 a.m.** |

Defendant SPARC Group LLC ("SPARC" or "Aéropostale" or "Defendant") hereby moves for an order dismissing Plaintiff Shawnna Montes's Class Action Complaint for Damages under the Consumer Protection Act, RCW 19.86 ("Complaint") in its entirety pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

## I. Introduction

Plaintiff's Complaint is heavy on bluster, but short on facts. Namely, while Plaintiff repeatedly claims that the leggings she purchased online from Aéropostale for $6 were never offered for their higher ticketed price, the Complaint fails to include a single fact regarding the price that these leggings were offered for sale in stores. Without such allegations, Plaintiff cannot plausibly allege that the ticketed price of the leggings was false or deceptive. Her

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 1

sole cause of action, under Washington's Consumer Protection Act ("CPA"), must be dismissed.

Plaintiff's CPA claim also fails because Plaintiff has not alleged any injury caused by her leggings purchase. The Complaint reflects a straightforward retail transaction: Plaintiff shopped online, saw a pair of leggings offered for $6, concluded that they were worth $6 to her, paid $6 to effectuate her purchase, picked them up in-store (where she had the opportunity to evaluate the leggings in person before taking them home), and then proceeded to wear them for many months without complaint. Plaintiff does not claim that the leggings are worth less than the $6 she paid, nor does she allege that they were defective, or that they otherwise failed to meet her expectations in any way. Even if she *could* allege facts to suggest that Aéropostale did not previously offer the leggings for sale at a higher price, which she cannot, that would still not change the fact that Plaintiff received her benefit of the bargain and was not injured.

Finally, although the Complaint challenges two different pricing practices: (1) discounts from former prices and (2) "free" offers (*e.g.* "buy one, get one free"), Plaintiff does not claim to have ever seen, relied on, or been injured by any "free" offer. She therefore lacks standing to bring claims as to free offers, so any allegations concerning such offers fail and should be dismissed or, alternatively, stricken from the Complaint.

## II. Background

### A. The Complaint's Allegations

Founded in 1987, Aéropostale is an American retail brand of casual apparel and accessories, principally directed to young adults. Aéropostale retail stores in the U.S. and e-commerce are operated by SPARC Group LLC.

This lawsuit stems from Plaintiff's January 9, 2021 purchase of a single

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 2

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 2

pair of leggings from Aéropostale's website for $6, discounted from a list price of $12.50. (Complaint, ECF No. 1 at ¶¶ 85–89.) Although she ordered the leggings online, she picked them up in-store, permitting her the opportunity to evaluate their quality, fit, and style, while she was still in the store, which also provided her the opportunity to assess her subjective value of the item before taking the item home. (*Id.* ¶ 93.)

The crux of Plaintiff's entire suit is her bald claim that Aéropostale "rarely if ever offered the Leggings at the $12.50 list price in ***any*** sales channel—whether online or in-store." (*Id.* ¶ 92, emphasis in original.) The Complaint repeatedly lists variations of this conclusory allegation:

> "Aéropostale perpetrated a massive false discount advertising scheme across nearly all of its Aéropostale-branded products and sales channels (i.e., on Aéropostale website and in its brick-and-mortar stores)." (*Id.* ¶ 3.)

> "Aéropostale invented inflated and fictitious list prices in order to enable it to advertise perpetual discounts and store-wide 'sale' events to induce customers to purchase its products." (*Id.* ¶ 6.)

> "Aeropostale virtually never offered its discounted products at the list price in ***any*** sales channel—whether online or in-store." (*Id.* ¶¶ 9, 50, 66, emphasis in original.)

> "Aéropostale's advertised discounts and reference prices were false and deceptive because it offered nearly all of its products at 50-70% nearly all of the time in all of its sales channels." (*Id.* ¶ 53.)

Significantly, and contrary to the implications in the Complaint, Plaintiff concedes that the leggings *were in fact offered at full price* just three days before her purchase, on January 6, 2021. (*Id.* ¶ 91.) Not only does this fact contradict her claim that the leggings were "almost never" offered at full price, Plaintiff goes on, without any factual basis, to dismiss this full-price offering as evidence

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 3

of "bad faith," done "solely for the purpose of 'establishing' its list price." (*Id.*; see also *id.* ¶ 72.) Plaintiff then asserts that the leggings are not worth the full price of $12.50, and that she would not have bought them "at the price she paid" (which, notably, was for less than half the full offer price) "but for" their allegedly deceptive reference price. (*Id.* ¶¶ 94–97.) It is unclear how much Plaintiff thinks the leggings she bought for only $6 and wore for months without complaint were actually "worth": less than $5? She would be hard-pressed to find any similar quality of leggings for the offer price, much less the $6 she actually paid.

Plaintiff's allegations are primarily based on her counsel's so-called "multi-year investigation" into Aéropostale's pricing, which pre-date Plaintiff's purchase and which the Complaint touts as "comprehensive" and "expansive." (*See id.* ¶¶ 65–76.) This so-called "investigation" was conducted almost exclusively online. Specifically, counsel allegedly used a "proprietary software program," which Plaintiff claims compiled pricing and marketing data from Aéropostale's website over the course of several years. (*Id.* ¶ 65.)[1]

As to in-store pricing, Plaintiff's lawyers' "investigation" was practically non-existent. Plaintiff does not identify a single day when Plaintiff's leggings were offered at a discount in an Aéropostale store; nor does she claim that either she or her counsel ever looked for the leggings in-store. Instead, the Complaint vaguely asserts, "[b]ased on the investigation of Plaintiff's counsel," that "Aéropostale's prices and false discount practices were substantially the same

---

[1] Plaintiff's so-called "big-data analysis" is full of serious flaws that SPARC has already identified with this supposed software but does not raise in the present motion.

DEFENDANT SPARC GROUP LLC'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 4

both online and in-store." (*Id.* ¶¶ 9, 47, 50, 66, 92; *id.* ¶ 66.) The only support for counsel's alleged "finding" in their purported exhaustive multi-year "investigation" consists of two irrelevant items that Plaintiff never bought or even saw—a women's long-sleeve tee and a men's polo shirt—which, on a single day each, years before Plaintiff's purchase, were offered at the same price online and in-store. (*Id.* ¶¶ 67, 69.)

Indeed, Plaintiff's counsel concedes that these two irrelevant items were never investigated in a Washington store. Notably, this is Plaintiff's counsel's fourth pricing lawsuit against Aéropostale, and their nearly identical complaints in New Jersey and California have all featured the exact same photographs, so it is clear this "investigation" by Plaintiff's attorneys was not related to Plaintiff's claims here.[2] When SPARC noted to the Court in the New Jersey case that Ms.

---

[2] *See* Declaration of Farron Curry Attaching Judicial Notice Documents in Support of Defendant SPARC Group LLC's Motion to Dismiss Plaintiff's Complaint, ECF No. 07 ("Curry Decl.") at Ex. A (Complaint, *Robey v. SPARC Group LLC*, No. L-003772-21 (N.J. Super. Ct. Law Div. June 10, 2021) (currently on appeal)); Notice of Removal, *Lisner v. SPARC Grp. LLC*, No. 2:21-CV-05713-AB (C.D. Cal. July 14, 2021); *see also* Complaint, *Montes v. SPARC Group LLC*, No. 21-2-07436-9 (Wash. Super. Ct. Sept. 14, 2021).

Plaintiff's counsel has also brought four cases against Eddie Bauer, another SPARC subsidiary, and lost each of those cases. *Clark v. Eddie Bauer LLC*, C20-1106-JCC, 2021 WL 1222521 (W.D. Wash. Apr. 1, 2021) (granting motion to dismiss; currently on appeal); *Harbers v. Eddie Bauer, LLC*, C19-1012JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) (granting motion to compel arbitration); *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999 (W.D.

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 5

Montes, the Plaintiff here, alleged that the in-store photographs were taken in Washington, Plaintiff's counsel insisted that they were actually taken in New Jersey:

> THE COURT: There's a representation that the photographs are not taken from the New Jersey stores.
>
> … MR. DE NITTIS: …***[T]hey were taken in New Jersey stores. They were. I'll represent to you they were because I took some of them in New Jersey stores.*** So, ***that reference by the defendants*** [that the photographs were, according to the Complaint in this case, taken in Washington] ***is false***. But, for purposes of this pleading, I can tell you that what we represented in this pleading is true but even if it wasn't in dispute, that's an issue of fact and, third, ***if it was a misrepresentation by our firm, we would have gotten one (indiscernible) saying that's a frivolous pleading***, if [sic] we have not.

Curry Decl., ECF No. 08, at Ex. B at 34:1-11 (emphasis added).[3]

Plaintiff purports to bring this lawsuit on behalf of "[a]ll citizens of the State of Washington who, since September 16, 2016, purchased from the Aéropostale website one or more products which was advertised with a discount or 'free' offer." (Complaint, ECF No. 1 at ¶ 98.) She does not claim to have

---

Wash. 2019) (denying plaintiff's motion to remand; plaintiff voluntarily dismissed thereafter); *Seger-Zawacki v. SPARC Group LLC*, Case No. 34-2021-00308184 (Cal. Sup. Feb. 3, 2022) (granting motion to compel arbitration).

[3] The Court does not need to accept as true allegations in Plaintiff's Complaint that are contradicted by matters subject to judicial notice, as they are here. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014). The Court may take judicial notice of the transcript and complaint from the New Jersey case because it is a matter of public record. *See Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1071 (D. Nev. 2020).

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 6

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 6

ever bought anything from Aéropostale involving a "free offer." Her sole cause of action is brought under the CPA. (*Id*. at ¶¶ 106–17.)

### B. Procedural History

On September 14, 2021, Plaintiff, represented by her same counsel in this present suit, first sued SPARC in Washington state court, in a case entitled *Montes v. SPARC Group LLC*, No. 21-2-07436-9 (Wash. Pierce Co. Super. Ct. Sept. 14, 2021). That Complaint in the state court suit was practically identical to the Complaint before this Court except that it included a second plaintiff and requested only injunctive relief, presumably in order to avoid removal of the case to federal court.

On March 18, 2022, Plaintiff voluntarily dismissed her claims in the state court case, leaving one remaining plaintiff in that case, Charlie Gabertan. *See* Order Granting Plaintiffs' Motion to Voluntarily Dismiss Without Prejudice Plaintiff Shawna Montes' Claims Only, *Montes v. SPARC Group LLC*, No. 21-2-07436-9 (Wash. Super. Ct. Mar. 18, 2022). Apparently in order to split their claims across multiple forums, Ms. Montes re-filed her claims in federal court, in the present action, on September 15, 2022.

On October 13, 2022, just six months before the scheduled trial date, Mr. Gabertan dismissed the original *Montes* case, immediately after SPARC revealed that he had not actually made the purchase at issue in that case, as alleged. *See id*. (Order Granting Plaintiff's Motion to Voluntarily Dismiss Complaint, *Montes v. SPARC Group LLC*, No. 21-2-07436-9 (Wash. Super. Ct. Oct. 13, 2022)).

### III. Argument

### A. Legal Standard

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 7

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 7

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).

A plaintiff alleging fraudulent conduct, including under the CPA, must further satisfy Rule 9(b), which requires the plaintiff to plead the circumstances constituting fraud with particularly. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). The Ninth Circuit has reiterated the importance of this heightened standard as follows:

> Because allegations of fraud inescapably carry a degree of moral turpitude, Rule 9(b) imparts a heightened note of seriousness, requiring a greater degree of pre-discovery investigation by the plaintiff, followed by the plaintiff's required particular allegations, thereby protecting a defendant's reputation from frivolous and unfounded allegations.

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021); *see also Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (Rule 9(b) "prohibit[s] plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."). Rule 9(b) therefore requires Plaintiff to conduct a pre-complaint investigation "in sufficient depth to assure that the charge of fraud is responsible and supported." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 8

### A. **Plaintiff Does Not Allege Facts to Suggest the Reference Price on Her Leggings Was False or Deceptive.**

Plaintiff's CPA claim fails under Rules 8 and 9(b) because she fails to "allege sufficient facts to show with particularity how [and] why" the reference prices on the leggings she—and the class—purchased were false or deceptive. *Sperling v. DSW, Inc.*, 699 F. App'x 654, 655 (9th Cir. 2017).

In *Sperling*, the plaintiff claimed that the defendant's "Compare At" reference prices were deceptive because they did not accurately reflect competitors' prices. 699 F. App'x at 655. The plaintiff's counsel in *Sperling*, like Plaintiff and her counsel here, claimed to have investigated the shoes at issue in that case that the plaintiff purchased—and even "found [the shoes she purchased] elsewhere" for less than the reference price she relied on, and cited specific prices charged by other retailers for that item. *Id.* Despite these allegations, the district court found, and the Ninth Circuit agreed, that the plaintiff failed to satisfy Rule 9(b) because the complaint was missing critically important facts about her counsel's alleged investigation, such as when it took place. *Id.*; *see also Sperling v. DSW Inc.*, EDCV151366JGBSPX, 2016 WL 354319, at *7 (C.D. Cal. Jan. 28, 2016) ("In short, Plaintiff's conclusory allegations regarding her efforts to investigate the prices of the shoes do not make clear that Defendants' comparative reference prices were deceptive and did not reflect market prices at the time they were listed."), *affirmed in* 699 F. App'x 654.

Here, by contrast, the Complaint alleges ***nothing*** about the pricing of leggings in Aéropostale's brick-and-mortar stores; Plaintiff's allegations pale in comparison to those found lacking in *Sperling*. It appears that the only "investigation" into Plaintiff's leggings was exclusively online—where Plaintiff admits that the leggings *were* offered at full price, just days before her purchase.

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 9

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 9

(Complaint, ECF No. 1 at ¶ 91.) It therefore appears that Plaintiff's counsel has no factual support for their supposed conclusion that the leggings were never offered at full price in-store, or, as a result, that the ticketed price was false or deceptive. And even if Plaintiff did not repeatedly allege that the leggings were never offered "in *any* sales channel," (*Id.* ¶¶ 9, 50, 66, emphasis in original), looking into only one channel where the leggings are sold would clearly be insufficient. This is because of the simple fact that the $12.50 reference price would not be "false" or "deceptive" if the leggings were offered in-store at that price.[4]

*People of California v. J.C. Penney Corp.*, No. BC643036, slip op., 2017 WL 11631487 (Cal. Sup. Ct., Sept. 6, 2017) is illustrative. There, Plaintiff's same counsel here, on behalf of the People of California, asserted "a theory of false and misleading advertising based on Defendants' having never charged the listed reference price, but [plaintiff has] offered only specific facts alleging that Defendants advertised reference prices in online sale listings, but never charged those prices online." *Id*. at *2. Similar to the Complaint here, the People purported to use the same proprietary software to track the daily pricing of items sold on the defendants' websites. The trial court in *J.C. Penney* sustained the

---

[4] The fiasco in Ms. Montes's initial case illustrates exactly why it is crucial that the Court require plaintiffs to allege these requisite facts at this early stage. Had Plaintiff's counsel in Montes's first case conducted any reasonable pre-suit investigation, they would have known that the other plaintiff, Mr. Gabertan, never actually made the purchase at issue. Instead, SPARC had to litigate through discovery and until just months before trial to dispose of his patently false claims.

DEFENDANT SPARC GROUP LLC'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 10

retailers' demurrers in full, explaining that the People could not allege the falsity of online prices without either: (a) alleging facts that each retailer "never, in its brick and mortar stores, charged the reference price"; or (b) "alleg[ing] that it is false or misleading to advertise a reference price on the internet when the product was never offered at the reference price on the internet . . . and to indicate the basis for this legal theory." *Id*. at *2. The Court explained:

> The People argue that it is not a part of their case, but rather a defense, if Defendants charged a reference price at their brick and mortar stores. This argument is incorrect. It is the People's burden to prove falsity or the misleading nature of the reference price. [Citation] The People must allege facts sufficient to show the falsity or the misleading aspect of the reference prices allegedly charged.

*Id*. at *2 (citing *National Council Against Health Fraud, Inc. v. Bio King Pharmaceuticals, Inc*. 107 Cal. App. 4th 1336, 1347 (2003)).

Here, too, Plaintiff's so-called "big-data analysis" does not get Plaintiff over the pleading hurdle, since it says nothing as to the in-store pricing of the items. Indeed, numerous other courts have similarly dismissed nearly identical pricing cases brought by Plaintiff's counsel, involving the same "software," where the complaint did not allege sufficient facts about the pricing for the items at issue. *See Lisner v. SPARC Grp. LLC*, No. 2:21-CV-05713-AB, 2021 WL 6284158 (C.D. Cal. Dec. 29, 2021) ("Plaintiffs' failure to allege the pricing information for the items Plaintiffs purchased in the FAC and/or investigate at the Aéropostale retail stores located in California is fatal to their claims that Aéropostale perpetrates a nationwide false discount advertising scheme for nearly all of its products offered across all of its sale channels."); *Robey v. PVH Corp.*, 495 F. Supp. 3d 311, 323 (S.D.N.Y. 2020) ("While the plaintiff claims to have conducted an 'investigation,' the plaintiff has failed to allege with

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 11

specificity that the investigation was sufficient to establish that the price cited was a 'fictitious former price'"); *DiCicco v. PVH Corp.*, 19 CIV. 11092 (ER), 2020 WL 5237250, at *4 (S.D.N.Y. Sept. 2, 2020) ("Contrary to [Plaintiff's] assertion, the price tags, sales receipt, and the banners hung on the store's front on October 24, 2020 only show that those items were on sale that day, not that they were always on sale."); *see also Nunez v. Best Buy Co.*, 315 F.R.D. 245 (D. Minn. 2016) (dismissing complaint incorporating data from an independent study that tracked pricing of items sold by retailer but did not include the items purchased by plaintiffs); *Azimpour v. Sears, Inc.*, Case No. 3:15-cv 02798-JLS-WVG, 2016 WL 7626188, (S.D. Cal, Oct. 17, 2016) (same).

Similarly, numerous courts have held that a plaintiff could not allege deceptive pricing with the particularity required by Rule 9(b), without alleging facts concerning the prices at which merchandise was sold in other channels. *See*, *e.g.*, *Sperling*, 699 F. App'x at 655 (affirming dismissal where plaintiff failed to allege that the she investigated the other retailers near the time of her purchase); *Dennis v. Ralph Lauren Corp.*, No. 16-cv-1056 (WQH)(BGS), 2016 WL 7387356 (S.D. Cal. Dec. 20, 2016) (granting motion to dismiss, in part based on plaintiff's failure to allege that a product "was unavailable at the $74.99 price at other locations offering Ralph Lauren products, such as the 'Polo retail stores[], high-end department stores, and related online stores.'"); *Taylor v. Nike, Inc.*, No. 16-cv-00661-MO, 2017 WL 663056 at *6 (D. Or. Feb. 17, 2017) (plaintiffs' allegations regarding advertised "Sugg. Retail Price[s]" were insufficient because it was unclear whether the allegedly misleading reference prices "were previously offered at Nike retail stores or other, non-outlet retailers."); *Rael v. Dooney & Bourke*, No.: 16-cv-0371 JM(DHB), 2016 WL 3952219, at *3 (S.D. Cal. July 22, 2016) (dismissing complaint premised exclusively on allegations of

DEFENDANT SPARC GROUP LLC'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT - 12

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 12

pricing in outlet stores, where plaintiff did not claim to have investigated mainline stores or website). This same analysis applies here, where Plaintiff flatly ignored Aéropostale's predominant sales channel.

Plaintiff cannot save her claims through her counsel's unsupported assertion that pricing is "the same" in-store and online. *Seegert v. Luxottica Retail N. Am., Inc.*, No. 17CV1372 JM(BLM), 2018 WL 3472561, at *3 (S.D. Cal. July 19, 2018) ("conclusions based upon an investigation by Plaintiff's counsel that 'confirmed' and 'concluded' that 'the prescription lenses were priced with false discounts from illusory 'regular' or reference prices,' . . . are insufficient to state a claim under Rule 9(b)"); *Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS(JMA), 2016 WL 7655247, at *7 (S.D. Cal. Dec. 28, 2016) ("disturbingly," plaintiff's counsel "seemingly purports to be the fact and expert witness in this case"). The only support for this theory consists of two products that she never alleges she purchased, which her counsel allegedly saw in-store on a single day, years before Plaintiff ever made her purchase. (*Id.* ¶¶ 67, 69.) And, according to concessions made by Plaintiff's own counsel before a court during a hearing in another one of their cases, these photographs were not even taken in Washington. Curry Decl., ECF No. 08, at Ex. B at 34:1-11. The photographs of these two random items have nothing to do with Plaintiff's leggings purchase in this case, and certainly do not establish that the leggings were never offered at full price. Without alleging facts that Aéropostale never offered the leggings at the list price in any channel, Plaintiff's claim fails.

### B. **Plaintiff Has Not Suffered Actual Harm.**

Even if Plaintiff could allege facts to suggest that her leggings were almost always on sale—which she cannot—her CPA claim still fails because she has not alleged any resulting injury. *Indoor Billboard/Washington, Inc. v. Integra*

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 13

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 13

*Telecom, Inc.,* 162 Wash. 2d 59, 170 P.3d 10, 17 (2007) (CPA standing requires an injury to business or property) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 719 P.2d 531, 533 (1986)). While the "injury involved need not be great, it must be established." *Hangman,* 719 P.2d at 539.

Plaintiff spent only $6 on leggings, which she then proceeded to wear without complaint for well over a year before filing this suit. She does not claim they are defective or damaged, or that they are lacking in value in any other feature regarding the quality of the item. Rather, she claims the leggings are not worth the full price of $12.50. Unfortunately for Plaintiff, failure to receive a windfall (*i.e.* more than what she paid for) is not a cognizable loss. Nor can Plaintiff assert an injury by claiming that "[i]f [she] had known the truth, she would not have purchased the Leggings at the price she paid," because her subjective regret about buying a product does not amount to a cognizable economic injury. (*See* Compl., ECF No. 1, at ¶ 97.) Where, as here, Plaintiff received the exact item she wanted, at the agreed-upon price she determined the item was worth to her before she bought it (even after seeing it in person in store), she did not suffer any harm.

*Brotherson v. Prof. Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1296 (W.D. Wash. 2009) is illustrative. *Brotherson* arises from the Seattle Supersonics' move to Oklahoma City. The plaintiffs, season ticketholders, sued on the theory that they would not have renewed their tickets if they had known the basketball team was moving. The Court held that notwithstanding the plaintiffs' alleged regret about buying tickets for the new season, they were not injured because they received the benefit of their bargain:

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 14

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 14

> Plaintiffs present no evidence from which a jury could conclude that Plaintiffs suffered an injury to their business or property as a result of PBC's deceptive conduct. Plaintiffs took advantage of the benefits of their 2008 season tickets to the greatest extent they could. Plaintiffs may have enjoyed Sonics games less as it became more likely that the team would leave Seattle at the end of the season, but that is at best the sort of mental injury that the CPA does not recognize.

*Id.* at 1296. Although *Brotherson* was decided at the summary judgment stage, the same reasoning supports dismissal here, given that the Complaint does not articulate any cognizable injury caused by SPARC's alleged misrepresentation. *See also Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012) (smart phone user's allegation that phone manufacturer's unauthorized transmission of data to its server caused a diminution in users' data plans was too nebulous to demonstrate injury absent an allegation the user paid a wireless carrier for a finite allowance rather than an unlimited usage plan); *Omni Innovations, LLC v. Smartbargains.com, LP*, 2010 WL 771816, at *3 (W.D. Wash. Mar. 2, 2010) ("actual harm" required for CPA standing); *but see Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.,* C14-10RAJ, 2014 WL 2154381, at *2 (W.D. Wash. May 22, 2014).

*Brotherson* is consistent with courts across the country, which have generally dismissed pricing claims where, as here, the plaintiff got the exact item she wanted at the price she agreed to pay. In *Shaulis v. Nordstrom*, 865 F.3d 1 (1st Cir. 2017), for example, the First Circuit explained that the flaw in plaintiff's theory of injury—"that the mere purchase of an item may constitute cognizable injury, regardless of the item's specific qualities—is that it merges the alleged deception with the injury." *Id.* at 11. The First Circuit continued:

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 15

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 15

> Shaulis arguably got exactly what she paid for, no more and no less, [her] alleged injury is only that Nordstrom tricked her into believing that she was getting a bargain, and not … that the product itself was deficient in some objectively identifiable way. That perceived adverse impact . . . the subjective belief as to the nature of the value [she] received – does not state a legally cognizable economic injury. . . .

*Id*. at 12 (quotations omitted); *see also Leigh-Pink v. Rio Properties, LLC*, 512 P.3d 322 (Nev. 2022) ("Where . . . plaintiffs assert only economic injury but have received the true value of their goods or services, we determine that the plaintiffs have not been injured and thus have not 'sustained' any damages."); *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 681 (6th Cir. 2017) ("**He got what he paid for: a $27 item that was offered as a $27 item and that works like a $27 item.**") (emphasis added); *Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) ("By charging this agreed price in exchange for ownership of the clothing, Carter's gave the plaintiffs the benefit of their bargain."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (same); *Mulder v. Kohl's Dep't Stores, Inc.*, 2016 WL 393215, at *6 (D. Mass., Feb. 1, 2016) ("**The fact that plaintiff may have been manipulated into purchasing the items because she believed she was getting a bargain does not necessarily mean she suffered economic harm**.") (emphasis added), *aff'd*, 865 F.3d 17 (1st Cir. 2017); *Hennessey v. Gap*, 2022 WL 4447399, at *5 (E.D. Mo. Sept. 23, 2022) ("[R]egardless of any other price listed, Defendants represented each product as having a value equal to the lower sale price. . . . Any displayed former price . . . was irrelevant to the products' represented value at the time of sale.") (citing, *inter alia*, *Turner v. Shalberg*, 70 S.W.3d 653, 659 (Mo. Ct. App. 2002)); *DaCorta v. AM Retail Group, Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909,

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 16

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 16

at *8 (S.D.N.Y. Jan. 23, 2018) ("In the absence of facts related to the value of the purchased product, or how the product fell short of what it purported to be, the [] Complaint only reflects Plaintiff's subjective disappointment."); *Ice v. Hobby Lobby Stores, Inc.*, 1:14CV744, 2015 WL 5731290, at *7 (N.D. Ohio Sept. 29, 2015) (same); *Clark v. Eddie Bauer LLC*, No. C20-1106-JCC, 2021 WL 1222521, at *4 (W.D. Wash. Apr. 1, 2021) (finding no ascertainable loss under Oregon law; currently on appeal); *Johnson v. Jos A. Bank Clothiers*, 2014 WL 4129576 (S.D. Ohio 2014).

These decisions persuasively demonstrate why a consumer's disappointment in not getting an advertised discount is not an objective loss of the benefit of the bargain.

C.  **Plaintiff Lacks Standing to Bring Claims as to "Free" Offers.**

Plaintiff's Complaint challenges two distinct promotional practices: (1) discounts from former prices (such as Plaintiff's purchase of $6 leggings, marked down from $12.50) and (2) "Free" offers (e.g. "Buy One, Get One Free"). (*Compare, e.g.* Compl., ECF No. 1, at ¶ 4 (concerning former prices) *and id.* ¶ 5 (concerning "free"); *see also id.* ¶ 6 (discussing the two theories separately).) The word "free" appears in the Complaint more than 50 times, including in its own entire section of argument. (*See id.* ¶¶ 54–64.) Crucially, however, Plaintiff does not claim to have seen or relied on this phrase, or been injured by any "free" offer.

Under Washington law, a Plaintiff cannot bring claims based on representations she did not see or rely on. *Maple v. Costco Wholesale Corp.*, 649 F. App'x. 570, 572–73 (9th Cir. 2016); *Stafford v. Sunset Mortg.*, No. C12-1877, 2013 WL 1855743 *3 (W.D. Wash. Apr. 29, 2013) ("even if Plaintiff could

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 17

prove . . . a deceptive act . . . her CPA claim still fails because she does not allege specific facts regarding causation"); *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1135 (W.D. Wash. 2013) (dismissing CPA claim for lack of standing where plaintiffs did not allege being the subject of allegedly wrongful conduct); *Vawter v. Quality Loan Serv. Corp. of Wash.*, 707 F. Supp. 2d 1115, 1129–30 (W.D. Wash. 2010) (dismissing CPA claim for lack of standing because plaintiffs "simply plead no actionable injury").

Because Plaintiff has not been injured by any "Free" offer, her claims must be dismissed to the extent they are based on such offers. To the extent the Complaint is not dismissed in its entirety, the class definition should be limited, and allegations concerning "Free" promotions should be stricken from the Complaint.

## IV. Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint.

Dated this 10th day of March, 2023.

SCHWABE, WILLIAMSON & WYATT, P.C.

By: /s/ Farron Curry
Farron Curry, WSBA #40559
Email: fcurry@schwabe.com
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711
Facsimile: 206-292-0460

*Attorneys for Defendant SPARC Group LLC*

DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT - 18

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\139992\277870\FDL\36172332.1

Page 18

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of March, 2023, I caused to be served the foregoing DEFENDANT SPARC GROUP LLC'S MOTION TO DISMISS on the following party at the following address:

> Daniel M. Hattis, WSBA No. 50428
> Che Corrington, WSBA No. 54241
> HATTIS & LUKACS
> 11711 SE 8th St., Suite 120
> Bellevue, WA 98005
> Telephone: (425) 233-8650
> Facsimile: (425) 412-7171
> dan@hattislaw.com
> che@hattislaw.com

by:

☐ U.S. Postal Service, ordinary first class mail
☐ U.S. Postal Service, certified or registered mail, return receipt requested
☐ hand delivery
☐ facsimile
☒ electronic service
☐ other (specify) _____

_/s/ Lauren Van Cislo_
Lauren Van Cislo, Legal Assistant

CERTIFICATE OF SERVICE - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711